**Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000583
08-SEP-2014
07:49 AM**

NO. CAAP-12-0000583

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
TYRONE SMITH, JR., Defendant-Appellant.

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 10-1-1569)

MEMORANDUM OPINION
(By: Leonard, Presiding Judge, Reifurth and Ginoza, JJ.)

Defendant-Appellant Tyrone Smith, Jr. (Smith) appeals from the Judgment of Conviction and Sentence (Judgment) filed on October 10, 2011, in the Circuit Court of the First Circuit[1] (circuit court). After a jury trial, judgment was entered against Smith for (1) Sexual Assault in the First Degree in violation of Hawaii Revised Statutes (HRS) § 707-730(1)(a) (Supp. 2013)[2] (Count 1); (2) Robbery in the Second Degree in violation of HRS § 708-841(1)(b) (Supp. 2013)[3] (Count II); and

---

[1] The Honorable Richard W. Pollack presided.

[2] HRS § 707-730(1)(a) provides:
    §707-730 **Sexual assault in the first degree.** (1) A person commits the offense of sexual assault in the first degree if:
        (a)   The person knowingly subjects another person to an act of sexual penetration by strong compulsion[.]

[3] HRS § 708-841(1)(b) provides:
    §708-841 **Robbery in the second degree.** (1) A person commits the offense of robbery in the second degree if, in the course of committing theft or non-consensual taking of a motor vehicle:
                                            (continued...)

(3) Kidnapping in violation of HRS § 707-720(1)(d) (Supp. 2013)[4] (Count III).

On appeal, Smith contends that (1) it was plain error for the circuit court to admit as evidence a credit card found in a garbage can, as well as evidence from a bedroom in which Smith was staying, all obtained without a search warrant; (2) it was plain error for the circuit court to admit the complaining witness's (CW) identification of Smith; (3) the counts charged are subject to merger; and (4) Smith received ineffective assistance of counsel.

For the reasons discussed below, we affirm the Judgment.

## I. Background and Evidence

The charges in this case arise from an incident that occurred around 8 p.m. on September 15, 2010, at the Wahiawā Shopping Center. After leaving work, the CW was attacked from behind as she reached the bottom of a stairwell by a Goodwill store. She was physically restrained, assaulted, threatened, sexually assaulted by digital penetration, and robbed. The CW was eventually able to run to safety.

According to the CW, her assailant took, among other things, around $20, credit cards, and a pack of Pall Mall cigarettes. The CW testified that she was able to get a good look at the assailant at certain points because there were lights from a nearby door and the stairwell.

---

[3]  (...continued)

....

    (b)    The person threatens the imminent use of force against the person of anyone who is present with intent to compel acquiescence to the taking of or escaping with the property[.]

[4]  HRS § 707-720(1)(d) provides:
§707-720 Kidnapping.  (1) A person commits the offense of kidnapping if the person intentionally or knowingly restrains another person with intent to:

....

    (d)    Inflict bodily injury upon that person or subject that person to a sexual offense[.]

Smith did not testify at trial, but testimony by others established that he had moved to Hawai'i with his girlfriend, Carol Ortiz (Carol), about a week before the subject incident. Smith and Carol were staying with Alexis Pusi (Alexis) and Yolanda Pusi (Yolanda), and their family members, in an apartment (the Apartment) in Wahiawā.[5]

On the evening of September 15, 2010, the date of the incident, Yolanda dropped Smith off at around 7 p.m. near Wahiawā District Park and Smith indicated he planned to play basketball. Smith later called Alexis' phone and asked to be picked up. Alexis, Yolanda, and Carol went to pick him up. According to Alexis, when Smith got into the car, Carol asked him in a whispered voice "how much did you get" and Smith responded "24 dollars." According to Yolanda's testimony, Carol said something to Smith when he got into the car and he responded "[a]bout 25 dollars." Carol, however, denied asking Smith "how much did you get" or that Smith showed her money when he got into the car.

Alexis also testified that Smith had a pack of Pall Mall cigarettes when they picked him up. Carol, however, testified that he had USA Golds cigarettes.

The next day, on September 16, 2010, Alexis and Carol found a credit card with the CW's name on it; the credit card was in a garbage can next to a house that fronted the building where the Apartment was located. The house was being fixed up so that Alexis and Yolanda could move into it. At the time Alexis and Carol found the credit card, they were working on the house and had gone to the garbage can to look for some window screen wire. Yolanda also testified that, at some point, Carol showed her the credit card. There is a dispute in the evidence whether Alexis or Carol took the credit card. As noted *infra*, the credit card was found the next day by police back in the garbage can.

---

[5] The record indicates there were at least six apartment units in the building where the Apartment was located.

According to Yolanda, at some point on September 16, 2010, she heard about a robbery and a rape that had been committed near the Goodwill store. She confronted Smith about whether he had raped a girl and he denied committing any rape but demonstrated how he had thrown a girl to the ground, put his knee on her head, demanded money, and got certain items from the girl. Later that night, Alexis, Yolanda, Carol and Smith watched the television news, which had a report about the incident and showed a sketch of the assailant based on a description by the CW. Alexis and Yolanda testified that after the report aired, they confronted Smith and he admitted to robbing a woman and he disclosed details of the incident, including how he had thrown the woman down and she had given him certain items. Carol, to the contrary, testified that Smith never said anything about committing a robbery or other crime.

The next day, September 17, 2010, Alexis went to the police. Yolanda also later gave a statement to the police. Honolulu Police Department (HPD) Detective Randal Platt (Detective Platt) testified that after Alexis and Yolanda gave their statements to the police, Smith became the primary suspect. Detective Platt explained that, based on what Smith had told them, Alexis and Yolanda knew more details about the incident than had been released to the media. Detective Platt also testified that the following other factors made Smith the suspect: Smith's resemblance to the sketch; Smith's physical characteristics fit that of the assailant; Smith was picked up the evening of the incident by Alexis, Yolanda and Carol in an area near to the location of the incident; Smith had called to be picked up not long after the incident had occurred; the CW's credit card was found near to where Smith was staying, which is miles away from the incident location and thus someone had to have carried the credit card to where it was found; and details of the incident that Alexis and Yolanda said were relayed to them by Smith matched the CW's statements about the incident.

Smith was arrested on September 17, 2010, two days after the incident. On that date, HPD Officer Kendrick Tahara (Officer Tahara) searched the garbage can by the front house without a warrant and found the CW's credit card, which had apparently been returned to the garbage can at some point. Also on this date, various items including two black carry-on pieces of luggage and a brown women's purse (bedroom evidence) were recovered from the bedroom in the Apartment in which Smith and Carol were staying. Although the police obtained Alexis' written consent to search the bedroom where Smith and Carol were staying, the search was done without Smith's consent and without a warrant. The day after being removed from the Apartment, the bedroom evidence was searched on September 18, 2010 pursuant to a search warrant. A pack of Pall Mall cigarettes was recovered from one of the bags seized from the bedroom.

Following the incident, the CW was shown two photographic lineups. The first, which took place on September 16, 2010, apparently did not include Smith's photograph and the CW did not identify anyone as the suspect. In the second photographic lineup, which the record indicates took place on either September 17 or 18, 2010, and which included a photograph of Smith taken upon his arrest, the CW identified a different person[6] as the assailant. The CW was not told that the man she identified was not the suspect. At trial, the CW testified that she had identified Smith in the second photographic lineup, apparently still unaware that she had identified another person. Smith did not object to the introduction of CW's testimony about the two photographic lineups or her identification of him as her assailant at trial.

During Detective Platt's testimony, he stated that he had administered the two photographic lineups presented to the CW. As to the second lineup, Detective Platt testified that the

---

[6] Testimony at trial indicated that the person the CW identified in the second photographic lineup had been incarcerated continuously in Tennessee since 1999.

CW had identified someone other than Smith. Detective Platt further testified that he did not inform the CW of the results of the lineup, including that she did not identify the suspect. He noted that, as a rule, they do not say whether the suspect was identified or not.

At trial, in addition to the testimony of the witnesses, the State sought to link Smith to the offenses by admitting into evidence the credit card with the CW's name that had been recovered from the garbage can, as well as a photograph of the Pall Mall cigarettes recovered from the bedroom evidence. There was no DNA test ordered in this case and no finger prints recovered from the CW's items.

II. Discussion

A. Admission of the CW's Credit Card

Smith contends the circuit court plainly erred in admitting the CW's credit card as evidence in the case. Smith fails, however, to demonstrate that he had a subjective expectation of privacy in the garbage can in which the credit card was found by Officer Tahara.

Because Smith did not challenge admission of the credit card at trial, we review for plain error. As stated by the Hawai'i Supreme Court,

> [t]he appellate court will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights. An appellate court's power to deal with plain error is one to be exercised sparingly and with caution because the plain error rule represents a departure from a presupposition of the adversary system--that a party must look to his or her counsel for protection and bear the cost of counsel's mistakes.

State v. Metcalfe, 129 Hawai'i 206, 222, 297 P.3d 1062, 1078 (2013) (internal quotation marks and citations omitted); see Hawai'i Rules of Penal Procedure (HRPP) Rule 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").

6

> Not every error at the trial court, even though of constitutional proportions, requires the appellate court to reverse the judgment below. Some constitutional errors may be deemed harmless where they are unimportant and insignificant in the total setting of a particular case. The test in these instances is whether the reviewing court is able to conclude, *from the record as a whole,* that the error was harmless beyond a reasonable doubt.

State v. Corpuz, 3 Haw. App. 206, 211-12, 646 P.2d 976, 980 (1982) (citations omitted) (emphasis added); see also State v. Pokini, 57 Haw. 26, 29-30, 548 P.2d 1402, 1405 (1976); HRPP Rule 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.").

Smith contends that he had "an expectation of privacy in the trash cans outside of his residence," and thus the police should have obtained a warrant to search the garbage can. "A defendant's ability to invoke the constitutional protections against unreasonable search and seizure depends upon whether he had a legitimate expectation of privacy in the invaded space." State v. Kolia, 116 Hawai'i 29, 34, 169 P.3d 981, 986 (App. 2007) (internal quotation marks and citation omitted). In turn, when determining whether a defendant had a reasonable expectation of privacy in an area, we apply the following two-part test derived from Katz v. United States, 389 U.S. 347 (1967):

> First, the defendant must exhibit an actual subjective expectation of privacy, and second, that expectation must be one that society would recognize as objectively reasonable. Furthermore, the defendant's claim to privacy can only be sustained if it is reasonable in light of all the surrounding circumstances[.]

Kolia, 116 Hawai'i at 34, 169 P.3d at 986 (internal quotation marks and citations omitted); see State v. Ching, 67 Haw. 107, 110, 678 P.2d 1088, 1091-92 (1984) (stating the same two-part test). In this case, Smith fails to meet the first part of the Katz test.

Smith relies on State v. Tanaka, 67 Haw. 658, 701 P.2d 1274 (1985), where the Hawai'i Supreme Court held in three consolidated cases that the defendants had a reasonable expectation of privacy in the contents of opaque, closed trash bags or trash bins in which evidence had been obtained by police

7

without a warrant. Id. at 660-62, 701 P.2d at 1275-77. In each of the Tanaka cases, the evidence in question was found in an "opaque, closed container." Id. at 661, 701 P.2d at 1276. In two of the cases, the police had searched trash located on business premises and the defendants testified in those cases that they had an expectation of privacy in their trash bags. Id. at 660-61, 701 P.2d at 1275-76. In the other case, the defendants' trash was located on "the curbside portion of their property" and "[t]he police officer entered defendants' property and seized the trash without a warrant." Id. at 660, 701 P.2d at 1276.

Unlike in Tanaka, Smith has not demonstrated an actual subjective expectation of privacy in the garbage can where Officer Tahara found the CW's credit card. Smith did not take the witness stand and there is no testimony by him, or anyone else, that he had an actual subjective expectation of privacy in the garbage can. Moreover, as argued by the State, the evidence does not establish that the garbage can in which the credit card was found was for the use of the Apartment residents. Instead, the evidence clearly shows that the garbage can was located on the side of the front house that Alexis and Yolanda were moving into, and that there was at least one other garbage can next to the apartment building where the Apartment was located. Smith asserts that the garbage can in question was used by the residents of the Apartment, apparently referring to when Alexis and Carol found the credit card. However, Alexis and Carol were working to fix the front house when they went to the garbage can. There is no evidence in this case that Smith had an actual subjective expectation of privacy in the contents of the garbage can and thus he cannot meet the first part of the Katz test. Thus, admission of the credit card was not plain error.

Even if Officer Tahara's search of the garbage can was deemed unreasonable, there would be no plain error in admitting the credit card because Alexis and Carol both testified about finding a credit card which bore the CW's name in the garbage can

next to the front house. Yolanda also testified that Carol showed her a credit card with the CW's name on it. Given the record, admission of the actual credit card did not add anything substantially different than the testimony provided by Alexis, Carol and Yolanda. In light of the entire record, the admission of the credit card would be harmless. See State v. Mundon, 121 Hawai'i 339, 368, 219 P.3d 1126, 1155 (2009).

    B.    <u>Admission of Photograph of Pall Mall Cigarettes</u>

        Smith contends that the circuit court plainly erred in admitting a photograph of the Pall Mall cigarettes. The cigarettes had been obtained from the bedroom in the Apartment where Smith was staying with Carol.[7] Smith contends the cigarettes "were referred to many times as the type taken from the CW the night of the incident." Smith did not move to suppress or object to admission of this evidence during trial and thus we review for plain error. See Kossman, 101 Hawai'i at 122, 63 P.3d at 430.

        Testimony at trial established that Smith had been staying in the bedroom at the Apartment for a little over a week. The police obtained consent from Alexis to search the bedroom, but there is no evidence that she was authorized by Smith to waive his rights. The police did not receive consent from Smith or have a search warrant prior to entering the bedroom and removing the bedroom evidence.[8] Thus, the search of the bedroom and the seizure of items therein were unreasonable. State v. Cuntapay, 104 Hawai'i 109, 116, 85 P.3d 634, 641 (2004) ("Petitioner was entitled to share in his host's security against unreasonable searches and seizures of the dwelling he was visiting."); State v. Mahone, 67 Haw. 644, 647, 701 P.2d 171, 173 (1985) ("A third party cannot waive another's constitutional

---

    [7] The actual cigarettes had been returned to Carol because the CW had not initially stated that Pall Mall cigarettes were among the items taken from her during the incident.

    [8] The items were apparently recovered, but unopened, until a warrant was executed the following day.

right to privacy unless authorized to do so."); <u>State v. Matias</u>, 51 Haw. 62, 66-67, 451 P.2d 257, 260-61 (1969) (holding that the defendant had a right to privacy in the premises of an apartment where he was an overnight guest, and that such a right could not be waived by another unless the defendant authorized another to do so). The State does not argue that any warrant exception applies to justify the warrantless search of the bedroom.

As noted earlier, constitutional errors may be deemed harmless if the reviewing court is able to conclude from the record as a whole that the error was harmless beyond a reasonable doubt. <u>Mundon</u>, 121 Hawai'i at 368, 219 P.3d at 1155; <u>Corpuz</u>, 3 Haw. App. at 211-12, 646 P.2d at 980. Viewing the record as a whole, the circuit court's admission of the photograph of the Pall Mall cigarettes was not plain error because it was harmless given the evidence in this case.

First, there was other more direct evidence about Smith possessing Pall Mall cigarettes after the incident. That is, Alexis testified that Smith had a pack of Pall Mall cigarettes when they picked him up on the evening of the incident. Although Carol testified to the contrary, that Smith had USA Golds when he was picked up, the picture of the Pall Mall cigarettes was not the only evidence about such cigarettes.

Second, and more importantly, regardless of the photo of the Pall Mall cigarettes, there was substantial other evidence in the record linking Smith to the offenses in this case. The testimony by Alexis and Yolanda (and to some extent even Carol) established, *inter alia*: Smith's location near to the incident at around the time it had occurred; his statements in the car when he was picked up that he had gotten $24 or $25; his admissions to Alexis and Yolanda about committing the robbery and the details of the incident he relayed to them that had not been made public; that Alexis and Carol found the CW's credit card the day after the incident in the garbage can, which was in the vicinity to where Smith was staying. In light of the overall record in this case, the photo of the Pall Mall cigarettes was not significant.

Therefore, because it was harmless, the circuit court did not plainly err in admitting the photograph of the Pall Mall cigarettes.

C.     CW's Identification of Smith

Smith did not object to the CW's in-court identification of him as the person who attacked her.  Reviewed for plain error, we determine that Smith's substantial rights were not affected and thus the circuit court did not err.

The jury heard contradictory testimony that could have affected the CW's credibility in identifying Smith as her attacker.  The CW testified that the man who attacked her was sitting in the courtroom, i.e. Smith, and that she had previously identified Smith as her attacker in a photographic lineup.  However, testimony from Detective Platt directly contradicted the CW's assertion that she had identified Smith in a photographic line up.  Detective Platt testified that, in the second photographic lineup, the CW failed to identify Smith and actually identified someone else as the attacker.  This type of testimony may have resulted in some question about the CW's ability to identify her attacker.  However, the jury also heard the CW testify in detail about her opportunity to view her attacker.  In this case, the jury was properly afforded the opportunity to judge the CW's credibility and the weight of the evidence.  See State v. Tamura, 63 Haw. 636, 637-38, 633 P.2d 1115, 1117 (1981) ("The jury, as the trier of fact, is the sole judge of the credibility of witnesses or the weight of the evidence."); State v. Masaniai, 63 Haw. 354, 365, 628 P.2d 1018, 1026 (1981) ("[t]he weight of the identification testimony and the credibility of the witnesses were for the jury to determine.  The defense counsel could cross-examine the witnesses, [and] point out any suggestibility in the identification procedure[.]") (citation omitted).  Therefore, Smith's substantial rights were not violated.

D.    The Counts Do Not Merge

Smith contends that the Robbery and Kidnapping charges should merge, and that the Kidnapping and Sexual Assault charges should merge.  He argues that "[s]ince the maximum that can be imposed for the Robbery charge is 10 years, Defendant would argue that should be the proper merged sentence."

In his opening brief, Smith does not point to anywhere in the record that the circuit court committed error as to merger, or where in the record he objected or brought an alleged error as to merger to the attention of the circuit court.  See Hawaiʻi Rules of Appellate Procedure (HRAP) 28(b)(4).  Thus, Smith's arguments will be disregarded except that we may notice plain error not presented below.  See HRAP 28(b)(4).  Even if we consider Smith's arguments for plain error, we conclude there was none.

Smith's sentence in this case was as follows: for the Sexual Assault in the First Degree and Kidnapping convictions (Counts 1 and 3), Smith was sentenced to twenty years of incarceration for each count, the terms to run consecutively with each other; for the Robbery in the Second Degree conviction (Count 2), Smith was sentenced to ten years, to run concurrently with the sentences for Counts 1 and 3.

In State v. Hoey, 77 Hawaiʻi 17, 881 P.2d 504 (1994), the Hawaiʻi Supreme Court construed the merger statute, HRS § 701-109(1)(e) (1993),[9] and stated that

---

[9]  HRS § 701-109(1)(e) provides:

§701-109 Method of prosecution when conduct establishes an element of more than one offense.  (1) When the same conduct of a defendant may establish an element of more than one offense, the defendant may be prosecuted for each offense of which such conduct is an element. The defendant may not, however, be convicted of more than one offense if:

.    .    .    .

(e)    The offense is defined as a continuing course of conduct and the defendant's course of conduct was
(continued...)

> [i]t is possible for kidnaping and robbery charges against a defendant to merge, pursuant to HRS § 701-109(1)(e), under circumstances in which (1) there is but one intention, one general impulse, and one plan, (2) the two offenses are part and parcel of a continuing and uninterrupted course of conduct, *and* (3) the law does not provide that specific periods of conduct constitute separate offenses.

Hoey, 77 Hawai'i at 38, 881 P.2d at 525 (emphasis added). Hoey relied in part on State v. Schroeder, 76 Hawai'i 517, 529-30, 880 P.2d 192, 204-05 (1994), State v. Hoopii, 68 Haw. 246, 251, 710 P.2d 1193, 1197 (1985), and State v. Correa, 5 Haw. App. 644, 649, 706 P.2d 1321, 1325 (1985). As indicated by the use of the word "and" in the Hoey test, it appears the prosecution can disprove merger if it can disprove any part of the test. Hoey further noted that the question whether the offenses in that case merged were questions of fact that should have been submitted to the jury. 77 Hawai'i at 38, 881 P.2d at 525.

In this case, special interrogatories related to merger were submitted to the jury. Special Interrogatory No. 2 addressed the charges of Sexual Assault in the First Degree and Kidnapping, and the jury answered "yes" to both of the following questions:

Question 1. Did the prosecution prove beyond a reasonable doubt that the Defendant did not commit Sexual Assault in the First Degree in Count I and Kidnapping in Count III, as part of a continuing and uninterrupted course of conduct?

       ✓   Yes        _____ No

Question 2. Did the prosecution prove beyond a reasonable doubt that the Defendant committed Sexual Assault in the First Degree in Count I and Kidnapping in Count III, with separate and distinct intents, rather than acting with one intention, one general impulse, and one plan to commit both offenses?

       ✓   Yes        _____ No

---

[9]  (...continued)

uninterrupted, unless the law provides that specific periods of conduct constitute separate offenses.

Special Interrogatory No. 3, in turn, addressed the charges of Robbery in the Second Degree and Kidnapping. The questions and the responses by the jury were as follows:

> Question 1. Did the prosecution prove beyond a reasonable doubt that the Defendant did not commit Robbery in the Second Degree in Count II <u>and</u> Kidnapping in Count III, as part of a continuing and uninterrupted course of conduct?
>    __✓__ Yes           _____ No

> Question 2. Did the prosecution prove beyond a reasonable doubt that the Defendant committed Robbery in the Second Degree in Count II <u>and</u> Kidnapping in Count III, with separate and distinct intents, rather than acting with one intention, one general impulse, and one plan to commit both offenses?
>    _____Yes           __✓__ No

In both instances, therefore, the prosecution disproved at least one part of the <u>Hoey</u> test. Thus, based on these findings by the jury, we conclude that Smith's contentions as to merger do not have merit.

We further note that even if the Kidnapping and Robbery charges *did* merge because the jury did not answer affirmatively as to both questions in Special Interrogatory No. 3 related to these charges, case law indicates and Smith conceded at oral argument, that the charges would merge upward. In other words, the Kidnapping charge, a class A felony, would remain, not the Robbery charge, a class B felony. HRS § 707-720(2); HRS § 708-841(2); <u>cf.</u> <u>Tomomitsu v. State</u>, 93 Hawai'i 22, 27, 995 P.2d 323, 328 (App. 2000) (stating that when a defendant is convicted of an offense and a lesser included offense, the conviction for the lesser included offense should be reversed, and the court selected the option that least disrupted the lower court's judgment). Under the sentence imposed by the circuit court, Smith would still be subject to twenty years of incarceration for each count of Sexual Assault in the First Degree and Kidnapping.

E. <u>Smith Did Not Establish His Ineffective Assistance of Counsel Claim</u>

When raising an ineffective assistance of counsel claim,

> [t]he defendant has the burden of establishing ineffective assistance of counsel and must meet the following two-part test: 1) that there were specific errors or omissions reflecting counsel's lack of skill, judgment, or diligence; and 2) that such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense. To satisfy this second prong, the defendant needs to show a possible impairment, rather than a probable impairment, of a potentially meritorious defense. A defendant need not prove actual prejudice.

State v. Wakisaka, 102 Hawai'i 504, 514, 78 P.3d 317, 327 (2003) (internal quotation marks, citations, and footnote omitted).

In his opening brief, Smith asserts his trial counsel "1) gave faulty advice as to the possible results of trial; 2) failed to interview witnesses; 3) did not challenge bias of Detective; [and] 4) did not investigate possible exculpatory witnesses for Defendant."

Smith fails to meet his burden to show ineffective assistance of counsel. His general assertions lack specificity, and he fails to show any possible impairment of a potentially meritorious defense. See id. Further, two of Smith's points concern alleged failures to obtain unidentified witnesses, yet, Smith fails to support his assertions with "affidavits or sworn statements describing the testimony of the proffered witnesses[,]" as required under State v. Richie, 88 Hawai'i 19, 39, 960 P.2d 1227, 1247 (1998).

III. Conclusion

Based on the foregoing, the Judgment of Conviction and Sentence filed on October 10, 2011, in the Circuit Court of the First Circuit, is affirmed.

DATED: Honolulu, Hawai'i, September 8, 2014.

On the briefs:

Lars Robert Isaacson
for Defendant-Appellant

Donn Fudo
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

Presiding Judge

Associate Judge

Associate Judge